UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>   v.<br><br>ANDREW ZACK,<br><br>             Defendant. | NO. CR-10-2130-LRS<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR RECONSIDERATION** |

BEFORE THE COURT, at the scheduled pretrial conference on September 15, 2011, was Defendant Zack's Motion for Reconsideration (ECF No. 78), and various other pending discovery motions. This order is entered to memorialize and supplement the Court's oral rulings.

<u>Motion for Reconsideration</u>

Defendant requests the Court to reconsider its Order Denying Defendant's Motion to Suppress (ECF No. 66), asserting that the evidence that was introduced at the evidentiary hearing altered the analysis of the issues raised in the motion to suppress. The Court disagrees and finds that Defendant's motion for reconsideration should be denied.

    A.   Probable Cause

Police may arrest a person without a warrant if the arrest

ORDER - 1

is supported by probable cause. *United States v. Buckner*, 179 F.3d 834, 837 (9th Cir. 1999)(citations omitted). "Probable cause exists when, under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the defendant] had committed a crime." *Id. (quoting United States v. Garza*, 980 F.2d 546, 550 (9 Cir. 1992)). Probable cause may exist where the source of information is "an eyewitness to the crime," even "in the absence of an independent showing of the reliability of the source," presuming "that the witness is fairly certain of the identification." *United States v. Hammond*, 666 F.2d 435, 439 (9th Cir. 1982).

Defendant argues that the officers should not have relied upon the information received from 16 year old Ethan Stevens ("Stevens") because he had told the officers he was using methamphetamine on the night he reported the incident that resulted in Defendant's charge. Defendant also argues that Stevens was not credible because: (1) Officer Whitefoot once attempted to find Stevens in relation to a criminal investigation; (2) Stevens and his brother were known to get "into quite a bit of trouble"; and (3) Stevens and his brother had previously been suspects in fights, broken windows, thefts, and possibly an assault with a weapon.

The government responds: (1) The officers were aware that the Defendant and Stevens were either friends or family members; (2) Defendant had asked Stevens to shoot him; (3) Defendant then pointed the firearm at Stevens and stated, "I am going to kill you;" (4) Defendant had recently ingested methamphetamine; (5) Stevens reported that the

ORDER - 2

firearm was loaded; (6) Stevens immediately reported the incident; (7) Stevens reported that there were at least two additional firearms in the residence; and (8) Stevens claimed he was carrying a knife to protect himself from the Defendant.

The Court finds that there was probable cause to arrest the Defendant based upon a totality of circumstances. The testimony showed that Stevens provided the officers with sufficiently detailed facts to cause a reasonable person to believe that a crime had been committed and that the Defendant was the perpetrator. Here, there is no dispute that Stevens was certain of the identification of the Defendant. There is no dispute that the officers knew that Stevens and the Defendant had a close relationship. Although it is true that Stevens admitted that he had recently ingested methamphetamine, Officer Whitefoot testified that he did not observe any symptoms of methamphetamine use. Officer Whitefoot observed that Stevens "sounded scared" which would not be unusual if someone had recently pointed a loaded firearm at your person and declared they were going to kill you.

B.   Arrest Inside the Residence

Defendant argues that "the Government has not shown that exigent circumstances existed in anything but the minds of the officers." Defendant argues that no exigent circumstances existed because: (1) one hour transpired from the time that Officer Whitefoot first spoke to Stevens; and(2) the officers did not attempt to obtain a search warrant.

ORDER - 3

The government asserts that the officers had probable cause to apprehend the Defendant by means of a warrantless search due to exigent circumstances. The Court agrees with the government. Exigent circumstances have been defined as "those in which a substantial risk of harm to the persons involved or the law enforcement process would arise if police were to delay a search [or arrest] until a warrant could be obtained. See *United States v. Al-Azzawy*, 784 F.2d 890, 894 (9th Cir. 1986).

In the present case, it appears that the officers acted quickly under the circumstances and based upon the information known to them. Stevens contacted Officer Whitefoot at 12:04 a.m. At that time, Officer Whitefoot learned: (1) Stevens had been at the Defendant's house; (2) the Defendant pointed a gun at him and said he was going to kill him; (3) the gun was a six-shot revolver; (4) Stevens was scared; and (5) Stevens had a knife for protection. Officer Whitefoot then instructed Stevens to go to another residence and wait for him. However, Officer Rogers[1] was not present until 12:39 a.m. It was only after speaking to Stevens that Officer Rogers was aware of all of the circumstances which required the officers to act quickly to apprehend the Defendant. Only approximately

---

[1] Officer Rogers was the superior officer on duty. Officer Whitefoot had two years of law enforcement experience. Officer Rogers had six years of law enforcement experience. Officer Rogers and Officer Whitefoot were the only tribal police officers working that early morning.

ORDER - 4

20 minutes elapsed from the time Officer Rogers heard the complete story until contact was made at the front door. Therefore, Defendant's argument that one hour had elapsed is not entirely accurate based on the testimony. The Court finds that based on the testimony at the evidentiary hearing, the officers had probable cause to apprehend the Defendant. Furthermore, exigent circumstances existed which required the officers to apprehend the Defendant without delay. Under these circumstances, the officers were not required to first obtain a search warrant.

C.  Consent to Search the Residence

Defendant argues that the Court should re-examine the issue of Winona Zack's consent to search the residence. The government responds that Winona's story is contradicted by two sworn police officers who have no motive to fabricate a story, which Defendant fails to address in his motion for reconsideration. The government concludes that Winona Zack's testimony is simply not believable and she had a motive to fabricate a story.

The Court finds that Winona's consent to search the home was voluntary. Officer Whitefoot apprehended the Defendant. At that time, Officer Rogers was standing outside of the residence. Officer Rogers then spoke with Winona. Winona expressed her desire to know exactly what was happening. Winona then invited Officer Rogers into her home. Officer Rogers then entered the home and explained the circumstances to Winona. Officer Rogers then asked for consent to search.

ORDER - 5

Winona then voluntarily provided consent to search the residence based on the weight of the evidence.  The Court also notes that police officers had been to Winona's home "several times in the past, usually looking for one of the neighborhood kids, and that by her testimony, she (Winona) had <u>always</u> cooperated and let them come in and search the home."  Although Winona Zack argues that on this one occasion, after numerous searches in the past, she asked the tribal police officer to explain her rights concerning consent to search, her testimony at the evidentiary hearing is contradicted by two sworn police officers who have no motive to fabricate a story.

    The Court concludes that the officers had probable cause to believe that the Defendant was armed and that he posed a danger to law enforcement, himself, and others.  The officers were invited into the residence, they observed the Defendant, and had probable cause to place him under arrest.  The Court further finds, as it did at the evidentiary hearing, that Winona voluntarily provided consent to search her residence. At the time the officers spoke with Winona, no firearms were drawn, no threats were made, she was not in custody, and it appears she voluntarily provided consent to search the residence, as she had always done in the past.  Accordingly,

    **IT IS HEREBY ORDERED:**

    1.   Defendant's Motion for Reconsideration, **ECF No. 78,** is respectfully **DENIED.**

ORDER - 6

2. Defendant's Motion for Discovery, **ECF No. 38,** is **GRANTED,** although the government indicates it is in compliance.

3. Defendant's Motion for Disclosure Evidence Pursuant Fed. R. Evid. 404 & 609, **ECF No. 40,** is **GRANTED.** Again, it is noted that the government is in compliance.

4. Defendant's Motion to Compel Grand Jury Transcripts, **ECF No. 42,** is **GRANTED,** however, the government need not provide such transcripts until two weeks prior to trial.

5. A pretrial/status conference is **SET** for **October 6, 2011** at **9:30 a.m. in Yakima**.

6. The 2-day jury trial **REMAINS SET** for **October 24, 2011** in **Yakima**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this order and to provide copies to all counsel, the U.S. Probation Office, the U.S. Marshal, and the Jury Administrator.

**DATED** this ___21st___ day of September, 2011.

*s/Lonny R. Suko*

_____
                LONNY R. SUKO
          United States District Judge

ORDER - 7